UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | |
|---|---|
| **XIAMEN BABY PRETTY PRODUCTS CO., LTD** | **CASE NO. 3:21-CV-00409** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **TALBOT'S PHARMACEUTICALS FAMILY PRODUCTS, LLC.** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

## REPORT AND RECOMMENDATION

Before the undersigned is a Motion to Dismiss [doc. #25] for failure to state a claim upon which relief can be granted filed by Defendant, Talbot's Pharmaceuticals Family Products, LLC ("Talbot's"). Talbot's files this Motion in response to a lawsuit filed by Plaintiff, Xiamen Baby Pretty Products Co., Ltd. ("Xiamen"), which alleges five causes of action. In its Motion to Dismiss, Talbot's asks the Court to recommend dismissal of the second, third, fourth, and fifth causes of action contained in Xiamen's Complaint, leaving only first claim of patent infringement.[1]

For the reasons assigned blow, it is recommended that Talbot's Motion be **GRANTED IN PART** and **DENIED IN PART**.

---

[1] Defendant's Motion to Dismiss refers to Counts II-V, but Xiamen did not style its causes of action in that way, so the Court will refer to the causes of action as they are listed in the Complaint.

## I. BACKGROUND

This case involves the alleged infringement of a patent and related claims. In or around August 2018, Xiamen and Talbot's sought to forge a business relationship whereby Talbot's would purchase and distribute several products made by Xiamen, a Chinese company. [doc. #1]. One of these products was a baby toilet ("Product WY028"), which Talbot's hoped to sell in the United States. *Id.* Xiamen explained that it already had an exclusive distributor for this product in the United States, but that it could design a new model of baby toilet, similar to Product WY028, which Talbot's could distribute. *Id.* Talbot's declined and said it would begin producing its own baby toilet which was similar in design to Product WY028. *Id.*

Approximately one month after this discussion, on or about September 2018, Xiamen informed Talbot's that circumstances had changed with the exclusive distributor of Product WY028 and that Product WY028 was available for the United States market if Talbot's was still interested. *Id.* Talbot's informed Xiamen that it had already begun producing its own baby toilet, and that, if Xiamen wanted Talbot's to distribute Product WY028, it would have to sell Product WY028 to Talbot's at an "unreasonably low price." *Id.* The parties could not come to an agreement as to the price for Product WY028; accordingly, Talbot's continued to produce its own baby toilet. *Id.*

On June 23, 2020, the United States Patent and Trademark Office ("USPTO") issued a Design Patent No. US D888,208 S for Product WY028 (the "'208 Patent"). *Id.* at 2. Although the exact date Talbot's began producing, marketing, and selling its product is unclear, according to the allegations, Talbot's began doing so before the '208 Patent was issued and continues to this day. [doc. #32].

On December 8, 2020, Xiamen filed a Complaint against Talbot's, a Florida limited liability company, in the United States District Court for the Southern District of Florida. In its Complaint, Xiamen alleged that the product Talbot's designed was "a near identical replica and copy of" Product WY028 and that Talbot's merely put its own "logo on a product comprised of Xiamen's design and began selling [it] as one of [Talbot's] own products." *Id.* at 3-4. Xiamen asserts that Talbot's convinced one or more factories to produce the baby toilet by falsely claiming that it owned the design for the product. *Id.* at 5. Next, Xiamen alleges that Talbot's takes those products and markets and sells them on websites. *Id.* at 5. Because it did not authorize Talbot's to use its design for Product WY028, Xiamen alleges that Talbot's production and sale of its baby toilet is unlawful. *Id.* at 4.

Specifically, Xiamen asserts five causes of action against Talbot's. First, it asserts that Talbot's, directly or under the doctrine of equivalence, infringed on Patent '208 under 35 U.S.C. § 101, *et seq.* "by its past and present importation, sale, and offers to sell the infringing product." *Id.* at 4. Second, Xiamen alleges that Talbot's induced factories and others to infringe on Patent '208 by falsely claiming that it owned the baby toilet design and contracting with the factories to produce a product with the same design as the '208 Patent, as well as online retailers to market and sell the product. *Id.* at 5. Third, Xiamen claims that Talbot's use of its design is a violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), because it is likely to deceive consumers as to the origin or source of Talbot's product, or cause consumers to believe that Xiamen and Talbot's products are affiliated. *Id.* at 6. Fourth, Xiamen alleges that Talbot's conduct is a violation of Fla. Stat. § 501.201, *et seq.*, the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), because the inferior materials and overall poor quality of Talbot's "inferior infringing product will deceive consumers into believing Talbot's inferior product is

authorized, endorsed, or sponsored by [Xiamen]." *Id.* at 7.  Finally, Xiamen claims that Talbot's has been unjustly enriched by accepting and retaining revenue from a design it did not own. *Id.* at 8.

On January 15, 2021, Talbot's filed a Motion to Change Venue [doc. #23].  After briefing was complete [docs. # 31; 33], the Southern District of Florida granted Talbot's motion, finding that the case should be transferred under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice."  The case was transferred to this Court for further proceedings.

Prior to transfer and in response to Xiamen's claims, Talbot's filed the instant Motion to Dismiss Counts II-V of Xiamen's Complaint.  [doc. #25].  Xiamen filed an opposition to the Motion [doc. #32].  Talbot's filed a reply [doc. #34].  Therefore, the motion is fully briefed, and the undersigned is prepared to issue a Report and Recommendation.[2]

## II. APPLICABLE LAW

The Federal Rules of Civil Procedure allow dismissal of a claim where the plaintiff fails "to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).  To state a claim, the pleading must contain a "short and plain statement . . . showing that the pleader is entitled to relief . . ." FED. R. CIV. P. 8(a)(2).  While the pleading need not assert detailed factual allegations, it must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A claim is plausible on its face "when the pleaded factual

---

[2] Following the transfer of the case to the Western District of Louisiana, the parties purported to reach agreement, and the case was tentatively closed.  [docs. # 48; 49].  However, in late July 2021, the parties filed a motion to re-open the case, which was granted by Judge Doughty.  [doc. #53].  Thereafter, the instant Motion to Dismiss, along with a Motion for Claim Construction Hearing [doc. #29] and a Motion for Preliminary Injunction [doc. #17], was re-opened.

content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009).

In deciding a motion to dismiss, the court must accept all the plaintiff's allegations as true, unless the allegation is a "threadbare recital[] of a cause of action's elements, supported by mere conclusory statements." *Id.* Although legal conclusions may be asserted, "they must be supported by factual allegations" to gain the assumption of truth. *Id.* at 664. A well-pleaded complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable, and that recovery is unlikely. *Twombly*, 550 U.S. at 556. Nevertheless, the court may dismiss a complaint "if it clearly lacks merit—for example, where there is an absence of law to support a claim of the sort made." *Thurman v. Med. Transp. Mgmt., Inc.*, 982 F.3d 953, 956 (5th Cir. 2020) (citations and internal quotation marks omitted).

In deciding cases that have been transferred from another circuit's district court under §1404(a), the applicable law is different for the alleged state law claims than it is for the alleged federal law claims. Questions of state law must be resolved using the laws of the state which would have been applied had the case not been transferred. *See Van Dusen v. Barrack*, 376 U.S. 805, 821 (1964) ("[T]he transferee district court must be obligated to apply the state law that would have been applied if there had been no change of venue. A change of venue under § 1404(a) generally should be, with respect to state law, but a change of courtrooms."). Questions of general federal law are decided using "the precedent of the circuit encompassing the transferee district court," while questions of substantive patent law are decided using Federal Circuit precedent. *Tel-Phonic Servs., Inc. v. TBS Intern., Inc.*, 975 F.2d 1134, 1138 (5th Cir. 1992); *In re Spalding Sports Worldwide, Inc.*, 203 F.3d 800, 803 (Fed. Cir. 2000).

## III. DISCUSSION

**A. Second Cause of Action – Inducement to Infringe**

The Patent Act holds liable any individual who "actively induces" another to infringe on a patent. 35 U.S.C. § 271. To hold an individual or entity liable for inducement to infringe, the plaintiff must show that (1) there has been a direct infringement; and (2) the alleged infringer knowingly induced infringement and specifically intended to encourage the infringement. *MEMC Elec. Materials, Inc. v. Mitsubishi Materials Silicon Corp.*, 420 F.3d 1369, 1378 (Fed. Cir. 2005). Courts have determined that the second requirement for inducement to infringe "necessarily includes the requirement that [the defendant] knew of the patent." *DSU Med. Corp. v. JMS Co., Ltd.*, 471 F.3d 1293, 1304 (Fed. Cir. 2006); *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 765 (2011).

First, to show inducement to infringe, the plaintiff must show direct infringement. *Mitsubishi*, 420 F.3d at 1378. Direct infringement occurs when an accused infringer "makes, uses, offers to sell, or sells the patented invention within the United States, or if it imports the patented invention into the United States." *epicRealm, Licensing, LLC v. Autoflex Leasing, Inc.*, 492 F.Supp.2d 608, 626 (E.D. Tex. 2007) (internal quotations omitted). "It is well-established that the reach of section 271(a) is limited to infringing activities that occur within the United States." *MEMC*, 420 F.3d at 1375-76 (citing *Rotec Indus. v. Mitsubishi Corp.*, 215 F.3d 1246, 1251 (Fed. Cir. 2000)). To constitute direct infringement of a product, the allegedly infringing product must include "each limitation of a claim, either literally or by an equivalent." *Id.* at 627 (internal quotations omitted). Direct infringement is a strict liability offense and, thus, does not require the alleged infringer to have a specific mental state. *Commil USA, LLC v. Cisco Sys., Inc.*, 575 U.S. 632, 639 (2015).

On the second element, however, the alleged infringer must have knowingly induced infringement and specifically intended to encourage the infringement. *Mitsubishi*, 420 F.3d at 1378. Courts have found that when a complaint makes the conclusory statement that the defendant knew of the patent but fails to allege facts to show how the defendant knew, the complaint does not sufficiently show knowledge of the patent.[3] *See Castlemorton Wireless, LLC v. Bose Corp.*, No. 20-cv-00029, 2020 WL 6578418, at *5 (W.D. Tex. July 22, 2020) (an allegation that the defendant "knew of the . . . patent and knew of its infringement" was not sufficient to survive a motion to dismiss as the mere allegation of patent knowledge did not constitute a pleading of "facts that would support an allegation" that the alleged infringer had patent knowledge).

In its motion to dismiss, Talbot's argues that Xiamen has failed to meet its burden as to both elements. Talbot's contends that Xiamen has alleged only inducement of manufacturer of the allegedly infringing product in China, which does not meet the requirements of the first element. Talbot's contends, further, that Xiamen has pled facts to show mere knowledge, which is not sufficient to demonstrate that Talbot's had the specific intent to infringe the '208 Patent.

---

[3] Although some courts have found that a complaint itself is sufficient to satisfy the requirement that the defendant had knowledge of the patent, this line of cases is inapplicable here for two reasons. First, these cases still require that the plaintiff allege in its complaint that the defendant knew of the patent at least since the filing of the complaint. *See id.* at *4-5 ("While various courts have accepted post-suit knowledge to satisfy the intent requirement, Plaintiff fails to expressly allege the basis of [Defendant's] awareness of induced infringement."). Xiamen did not allege knowledge based on its Complaint. Moreover, using the complaint itself to show knowledge is sufficient only when the plaintiff's claim of inducement is limited to post-suit infringement. *Stragent, LLC v. BMW of N. Am., LLC*, No. 16-cv-448, 2017 WL 2821697, at *8 (E.D. Tex. Mar. 3, 2017). Therefore, if the plaintiff wishes to allege pre-suit and post-suit infringement, the complaint must allege knowledge of the patent by way of something other than the complaint alone. *Id.* Here, Xiamen appears to allege pre-suit and post-suit infringement. [doc. #32, p. 16].

Finally, Talbot's relies on the declaration of Talbot's president, Abraham J. Hakim, that all negotiations for the purchase of the accused products occurred on or prior to May 5, 2020, prior to the issuance of the '208 Patent, and, thus, as a matter of law, there can be no infringement of the patent. [doc. #25-1].

In its opposition brief, Xiamen responds that Talbot's arguments as to the first element fail to address its allegations in Paragraphs 24 and 26 of the Complaint. Xiamen asserts that it has alleged facts demonstrating that Talbot's induced the manufacturing factories **and** the "various online sales platforms," including Amazon, Target, Walmart, and eBay, into manufacturing and selling the infringing product. [doc. #1, ¶¶ 24, 26]. As to the second element, Xiamen contends that it has adduced sufficient facts that demonstrate that Talbot's actions "actually induced infringement by having factories make knowingly infringing products and having retailers sell the knowingly infringing products." [doc. #32, p. 5]. Xiamen points out that the any argument that the negotiations at issue pre-dated the issuance of the '208 patent ignores the fact that sales of the infringing product continue to this date, long after issuance of the patent. As to the other statements contained in Mr. Hakim's so-called "self-serving declaration," Xiamen urges the Court to disregard them as speculative, intentionally misleading, and refuted by the Complaint. *Id.*

Talbot's, in its reply brief, argues that Xiamen's claim for inducement to infringe must fail because Xiamen has not alleged direct infringement by anyone other than Talbot's. [doc. #34, p. 2]. Talbot's further argues that, even if an entity other than Talbot's directly infringed, "[t]here are no facts plead to show how Defendant acted to induce [the online] retailers to directly infringe the . . . ['208] Patent from which the Court can draw a reasonable inference that the inducement to infringe claim is plausible." *Id.* Finally, Talbot's reiterates its argument that

8

Xiamen has failed to plead any specific facts to show willful and knowing inducement of the '208 Patent and instead offers merely "[c]onclusory allegations and unwarranted deductions of fact." [doc. #34, p. 3].

In its Complaint, Xiamen alleges that Talbot's "found factories that could manufacture Xiamen's design for cheaper than Xiamen could offer. [Talbot's] put their 'Nuby' logo on a product comprised of Xiamen's design and began selling the baby potty products as one of Talbot's own products." [doc. #1]. In paragraph 24 of the Complaint, Xiamen alleges:

> Defendant markets and sells the infringing product under the brand name "Nuby" through websites and accounts on websites, including but not limited to, Nuby-uk.com, Amazon.com, Target.com, Walmart.com, [and] eBay.com . . .

[doc. #1, ¶ 24]. Additionally, Xiamen alleges that Talbot's induced the factories and the retailers into manufacturing, importing, and selling these potties. These allegations are sufficient to make out a finding of direct infringement for purposes of a motion to dismiss.

Reading the Complaint in the light most favorable to Xiamen, Talbot's found manufacturers to produce a near replica of Product WY028, indicating that Talbot's product had "each element" of the '208 Patent. Talbot's then imported its product and sold it in the United States on various retailers' websites, including but not limited to, Amazon.com, Target.com, and Walmart.com. [doc. #1]. While Talbot's is correct in that Xiamen's Complaint alleges that "*Defendant* markets and sells the infringing product through websites and accounts on websites," these are not direct sales from Talbot's own websites. *Id.* (emphasis added). Rather, Talbot's is marketing and selling its product "through" the retailers' websites, which makes clear that the websites must be retaining some financial gain and are, thus, allegedly infringing as well. Therefore, the Court finds unpersuasive Talbot's argument that the Complaint only alleges that Talbot's, and not the retailers, is directly infringing. Xiamen has sufficiently plead, for purposes

of a motion to dismiss, the first element of its second cause of action for direct infringement by a party other than Talbot's.

However, on the second element, Xiamen fails to allege facts sufficient to meet its burden. Xiamen alleges that "Defendant knew that their infringing product [was] covered by the '208 Patent. Hence, every sale of the infringing product by Defendant was made with actual knowledge of each infringement of the '208 Patent and with willful disregard to Plaintiff's patent rights." [doc. #1, p. 5]. However, Xiamen does not allege facts to show that Talbot's knew of the '208 Patent. To the extent that Xiamen relies on its Complaint to provide knowledge, Xiamen failed to assert that the Complaint provided Talbot's with knowledge of the '208 Patent. While common sense leads to the conclusion that the Complaint did in fact inform Talbot's of the '208 Patent, a motion to dismiss does not allow the Court to speculate in this way. *Affinity Labs*, 2014 WL 2892285, at *4. Moreover, even if Xiamen could properly rely on the Complaint to provide Talbot's notice of the '208 Patent, its claim for inducement to infringe would be limited to "post-filing conduct" when it seeks both pre-suit and post-suit infringement. *Id.* at *5. Moreover, even if there were sufficient facts to allege knowledge, Xiamen has failed to plead facts showing intent.

Because Xiamen has failed to plead facts sufficient to allege Talbot's knowingly and with specific intent induced infringement and that Talbot's had knowledge of the '208 Patent, it is recommended that Talbot's Motion to Dismiss Xiamen's second cause of action be **GRANTED,** subject to Xiamen's amendment of its Complaint, as discussed *infra*.

### B. Third Cause of Action – Federal Unfair Competition

The purpose of the Lanham Act is "to make actionable the deceptive and misleading use of marks, [and] to protect persons engaged in . . . commerce against unfair competition." *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 28 (2003) (internal quotations omitted). In an effort to do so, the Lanham Act affords a civil action against any individual who "uses in commerce . . . any false designation of origin . . . which is likely to cause confusion," mistake, or deception "as to the affiliation, connection, or association of such person with another person, or as to the origin . . . of his or her goods." 15 U.S.C. § 1125(a). While "§ 1125(a) is one of the few provisions [of the Lanham Act] that goes beyond trademark protection," the Supreme Court has explained that it "does not have boundless application as a remedy for unfair trade practices." *Id.* at 28-29 (quoting *Alfred Dunhill, Ltd. v. Interstate Cigar Co., Inc.*, 499 F.2d 232, 237 (2d Cir. 1974). Rather, § 1125(a) only applies "to certain unfair trade practices prohibited by its text." *Dastar*, 539 U.S. at 29.

In *Dastar Corp. v. Twentieth Century Fox Film Corp*, the Supreme Court analyzed whether one of these prohibitions under § 1125(a) is the unauthorized copying of work. *Id.* at 25. Dastar allegedly copied a television series, *Crusade in Europe. Id.* Dastar acquired the original version of the series, copied it with minimal edits, created new packaging, and then distributed the copies under a different title[4] with no reference or credit given to the series or Twentieth Century Fox Films ("Fox"), which held the copyright to the series. *Id.* at 25-27. Fox brought a lawsuit claiming that Dastar's unauthorized use of the series was a violation of 35

---

[4] The TV series was marketed under the title, *World War II Campaigns in Europe.*

11

U.S.C. § 1125(a) as it would deceive consumers as to the origin of the film. [5] *Id.* at 27. In its opinion, the Supreme Court explained that the production of a different – albeit very similar – product is not a violation of the Lanham Act because "the 'origin' of the physical products . . . is the producer of the tangible product sold in the marketplace," not the creator of the copied idea or concept. *Id.* The Supreme Court reasoned that deeming the creator of the idea or concept underlying the good as the "origin" would not only stretch the text of the Lanham Act, but would be inconsistent with its purpose. *Id.* at 32. The Lanham Act seeks to protect consumers from deceit; however, the *Dastar* Court posited that consumers generally do not believe or care whether the producer of the product they are purchasing is the same producer who came up with the idea for the product. *Id.* at 32. Therefore, the purpose of the Lanham Act would not be served by protecting consumers from something which is typically of no consequence to them.[6] *Id.* at 32-33.

Talbot's claims that Xiamen's claim under the Lanham Act must be dismissed because it is a trademark statute and, thus, inapplicable to Xiamen's claims, which do not raise questions of trademark or trade dress. [doc. #25, p. 5]. Xiamen counters that the Lanham Act has been applied to patent cases before and is applicable to this case. [doc. #32, p. 10].

---

[5] In its opinion, the Court explained that Dastar's actions surely would have amounted to a false designation of origin if Dasar had merely taken the videos and repackaged them as its own; however, Dasar's conduct was much different as Dasar "took a creative work . . . copied it, made modifications (arguably minor), and produced its very own series of videotapes." *Dastar*, 539 U.S. at 31.

[6] The Supreme Court also noted that the Lanham Act is not necessary to protect creators from this type of copying because patents and copyright exist for that very reason. *Dastar*, 539 U.S. at 37. As Justice Scalia explained, the Supreme Court in the past has held that the Lanham Act "does not exist to reward manufacturers for their innovation in creating a particular device; that is the purpose of the patent law and its period of exclusivity." *Id.* at 34 (citations and internal quotation marks omitted).

While 35 U.S.C. § 1125(a) can go beyond trademark protection, Xiamen has failed to allege conduct by which violates 35 U.S.C. § 1125(a). *Dastar*, 539 U.S. at 28-29. Here, Xiamen alleges that Talbot's took Xiamen's product, produced a nearly identical version, and began marketing and selling the product as though it was Talbot's. [doc. #1]. Xiamen claims that this behavior is a violation of the Lanham Act as it deceives customers as to the origin of the product. *Id.* However, as the Court in *Dastar* explained, "origin" does not refer to the creator of the original work from which the allegedly infringing product was copied. 539 U.S. at 31. Rather, "'origin' refers only to the manufacturer or producer of the physical 'goods' that are made available to the public.'" Here, "origin" includes the allegedly infringing work produced by Talbot's. *Id.* Talbot's did not take Xiamen's product, manufactured or produced by Xiamen, and then repackage it as its own. Talbot's produced, and had manufactured, its own very similar baby toilet. Because Xiamen has failed to make allegations sufficient to establish a claim under the Lanham Act, it is recommended that Talbot's Motion to Dismiss Xiamen's third cause of action be **GRANTED**.

### C. Fourth Cause of Action – Florida's Deceptive and Unfair Trade Practices Act

In an effort "[t]o protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce," the Florida Legislature enacted Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"). Fla. Stat. § 501.202(2). Under FDUTPA, "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts" are unlawful. Fla. Stat. § 501.204(1). To succeed in a cause of action under FDUTPA, the plaintiff must show (1) the defendant engaged in a deceptive act or unfair practice

in the course of trade or commerce; (2) causation; and (3) actual damages. *Rollins, Inc. v. Butland*, 951 So.2d 860, 869 (Fla. 2d DCA 2006).

Here, Talbot's asserts that dismissal of Xiamen's fourth cause of action is proper because, *inter alia*, Xiamen has not asserted loss of actual damages, as is required by the FDUTPA. [doc. #25]. Instead, Xiamen merely asserts consequential damages in the form of past lost profits. *See Nyquist v. Randall*, 819 F.2d 1014, 1017 (11th Cir. 2000) (lost profits "may indeed be the quintessential example of consequential damages"); [docs. #25; 32]. Talbot's, therefore, alleges that "Xiamen has not pled any actual damages, but rather has explicitly claimed consequential damages, which are not included under the FDUTPA statute." [doc. #25].

Xiamen does not deny that Florida courts previously found that lost profits are not actual damages and thus could not be recovered under the FDUTPA. Instead, Xiamen argues that this position is being eroded and substituted for a broader, more liberal interpretation which allows past lost profits to be categorized as actual damages. [doc. #32]. First, Xiamen cites to a Florida Bar Journal article criticizing the case which determined that lost profits are not actual damages as an overly narrow reading of the damages recoverable under the FDUTPA. *Rollins, Inc. v. Heller*, 454 So.2d 580 (Fla. 3d DCA 1984); [doc. #32]. Second, Xiamen cites to a string of cases which appear to distinguish past from future lost profits and allow past lost profits to be classified as actual damages. [doc. #32]. Xiamen suggests that the Florida Bar Journal article and the three cases which appear to categorize past lost profits as actual damages stand for the proposition that Florida courts "are turning away from the overly narrow interpretation of 'actual damages' in favor of a more inclusive interpretation consistent with public policy in protecting consumers and other businesses from unfair and deceptive trade practices." [doc. #32].

The undersigned is unpersuaded.  The Florida Bar Journal article cited by Xiamen is not binding authority and, thus, holds no precedential weight.  Although there are some district court cases in the Eleventh Circuit that have recently ruled that past lost profits are actual damages, other courts have pointed out the lack of analysis and "equivocal language" contained in the cases Xiamen relies upon.  *Midway Labs USA, LLC v. S. Serv. Trading, S.A.*, No. 19-24857, 2020 WL 2494608, at *7 (S.D. Fla. May 14, 2020).  For example, in *Tracfone Wireless, Inc. v. Cooper Tire & Rubber Co.*, a case deeming past lost profits as actual damages which Xiamen relies on for this assertion, the "court conducted no analysis of the actual damages issue and cited no authority for its decision not to dismiss for failure to plead actual damages." *Diversified Mgmt. Sols., Inc. v. Control Sys. Rsch., Inc.*, No. 15-81062, 2016 WL 4256916, at *6 (S.D. Fla. May 16, 2016).  Similarly, in *Factory Direct Tires Inc. v. Cooper Tire & Rubber Co.*, another case cited by Xiamen, the Court merely stated that "[i]t would appear that such damages constitute 'actual damages' under FDUTPA."  No. 11-255, 2011 WL 14117118, at *7 (N.D. Fla. Oct. 24, 2011).  Finally, this is a matter of state law.  Without a decisive ruling by the Florida Supreme Court or at least some persuasive authority from the state appellate courts, this Court is not inclined to stray from the "well-settled" standard "that consequential damages in the form of lost profits are not recoverable under FDUTPA." *Five for Ent. S.A. v. Rodriguez*, 877 F.Supp.2d 1321, 1331 (S.D. Fla. 2012).  Therefore, because Xiamen failed to allege actual damages in its Complaint, it is recommended that Talbot's Motion to Dismiss Xiamen's fourth cause of action be **GRANTED**.

### D. Fifth Cause of Action – Unjust Enrichment

Florida law provides for an unjust enrichment claim "where it is deemed unjust for one party to have received a benefit without having to pay compensation for it."  *14th & Heinberg,*

*LLC v. Terhaar & Cronley Gen. Contractors, Inc.*, 43 So.3d 877, 880 (Fla. 1st DCA 2010). To succeed on an unjust enrichment claim, the plaintiff must show that (1) he has conferred a benefit onto the defendant, who has knowledge of such benefit; (2) the defendant voluntarily accepts and retains the benefit conferred onto him; and (3) it is inequitable for the defendant to retain the benefit without first paying the plaintiff the value of the benefit. *Duty Free World, Inc. v. Mia. Perfume Junction, Inc.*, 253 So.3d 689, 693 (Fla. 3d DCA 2018).

Talbot's argues that Xiamen's unjust enrichment claim must fail because it is preempted by federal patent law as the unjust enrichment claim fails to assert facts that are different from the federal claims. [doc. #25, p. 10]. Talbot's also argues that Xiamen has failed to establish what benefit has been conferred onto Talbot's and how Talbot's voluntarily accepted the benefit. *Id.* In its opposition, Xiamen argued that because the categories of damages pertaining to the federal claims are different than those for the unjust enrichment claim, the unjust enrichment claim alleges different or additional facts. [doc. #32, p. 16]. Moreover, Xiamen claims that the benefit Talbot's received was knowledge of the design before '208 Patent was issued and that it voluntarily accepted this benefit when it took the design for its own use. *Id.*

Xiamen has alleged facts that are not pled in its patent infringement claims. In its patent infringement claims, Xiamen claims damages and wrongful conduct pertaining to actions Talbot's took after the patent had been issued. [docs. #1; 32]. On the other hand, in its unjust enrichment claim, Xiamen claims damages and wrongful conduct from actions Talbot's took before the patent had been issued. *Id.* The allegations in the unjust enrichment claim simply could not be litigated under the patent infringement claims. *See State Farm Fla. Ins. Co. v. Bonham*, 886 So.2d 1072, 1075 (Fla. 4th DCA 2004) ("[T]he lawsuits are different causes of

action based on unrelated theories and feature different measures of damages."). Therefore, Xiamen's unjust enrichment claim is not preempted by federal law.

Additionally, Xiamen has pled facts sufficient to establish that a benefit was conferred onto Talbot's and that Talbot's voluntarily accepted that benefit. A benefit was conferred on Talbot's in the form of knowledge of the baby toilet design. Xiamen claims that Talbot's had access to this design in meetings with Xiamen where it saw and discussed the product Talbot's allegedly recreated and sold. [doc. #1]. Although Talbot's asserts that Xiamen's product was "already publicly available and in the public domain during negotiations between Plaintiff and Defendant," this cannot be true. [doc. #34, p. 6]. Xiamen does not assert that its product was publicly known, and it certainly does not assert that it was in the public domain prior to the issuance of the '208 Patent. Reading the Complaint in the light most favorable to the plaintiff, Xiamen at most contends that two parties – the original exclusive distributor and Talbot's – knew of or saw the product. [doc. #1]. In fact, nowhere in Xiamen's Complaint does it argue that the product was on sale before it was patented; it only asserts that Talbot's alleged replica of the product was on sale prior to the '208 Patent's issuance. [doc. #32]. This position is bolstered by the fact that the '208 Patent was issued at all. *See Helsinn Healthcare S.A. v. Teva Pharm. USA, Inc.*, 139 S. Ct. 628, 631 (2019) (The American Invents Act precludes a patent from being issued on a product that was "in public use, on sale, or otherwise available to the public before the effective filing date of the claimed invention"). Had Xiamen's product truly been "publicly available and in the public domain" prior to the issuance of the '208 Patent, as Talbot's claims, the '208 Patent could not have been issued by the USPTO. Moreover, Talbot's voluntarily accepted this benefit by using the design to create its own baby toilet product and retaining the payments for that product. These allegations are sufficient to survive a motion to dismiss.

17

Therefore, the undersigned finds that Xiamen's claim that Talbot's was unjustly enriched by Talbot's misappropriation of the product design is not federally preempted. *Bonito Boats*, 489 U.S. at 142. It is recommended that the Motion to Dismiss Xiamen's Fifth Cause of Action be **DENIED**.

### D. Leave to Amend

The court is obliged to "freely" grant leave to amend "when justice so requires." FED. R. CIV. P. 15(A)(2). Furthermore, "[d]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable . . . " *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). While the Court considers the defects in the third and fourth causes of action to be incurable, it is conceivable that Xiamen can cure the deficiencies in the second cause of action for inducement to infringe. Although Xiamen requested leave to amend in its Memorandum in Opposition to Talbot's Motion to Dismiss, such a "bare request in an opposition to a motion to dismiss – without any indication of the particular ground on which the amendment is sought – does not constitute a motion within the contemplation of Rule 15(a)." *U.S. ex rel. Willard v. Humana Health Plan of Tex. Inc.*, 336 F.3d 375, 387 (5th Cir. 2003). Accordingly, the instant recommendation of dismissal is subject to Xiamen's opportunity to file an Amended Complaint addressing the deficiencies in the second cause of action. The Amended Complaint must be filed within the deadline to file objections to this report and recommendation.

Accordingly, having considered the relevant factors, **IT IS RECOMMENDED** that Talbot's Motion to Dismiss the Second, Third, and Fourth Causes of Action in Xiamen's Complaint be **GRANTED**, and Talbot's Motion to Dismiss the Fifth Cause of Action in Xiamen's Complaint be **DENIED**. This recommendation as to Xiamen's Second Cause of

Action is subject to Xiamen's amendment of its Complaint within fourteen (14) days of the date of this Report and Recommendation to remedy the cited deficiencies in its Second Cause of Action.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  A courtesy copy of any objection or response for extension of time shall be furnished to the District Judge at the time of filing.  Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE in Chambers on this 23rd day of November 2021.

KAYLA D. MCCLUSKY
UNITED STATES MAGISTRATE JUDGE