UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | | |
|---|---|---|
| XIAMEN BABY PRETTY PRODUCTS CO., | ) ) | Civil Action No: 3:21-CV-00409-TAD-KDM |
| *Plaintiff,* | ) ) | |
| v. | ) ) | Judge Terry A. Doughty |
| TALBOT'S PHARMACEUTICALS FAMILY PRODUCTS, LLC | ) ) ) | Magistrate Judge Kayla D. McClusky |
| *Defendant.* | ) ) ) | **JURY TRIAL DEMANDED** |

**DEFENDANT'S REPLY IN SUPPORT OF
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT**

The allegations in Plaintiff's First Amended Complaint[1] of direct patent infringement, indirect patent infringement, willful infringement, and unjust enrichment fail to state a claim and should be dismissed. Instead of responding to the arguments raised in Talbot's Motion to Dismiss,[2] Plaintiff's Opposition[3] raises new theories and allegations not contained in the FAC, rebuts strawman arguments not found in Talbot's Motion, and is replete with red herrings:

- 🐟 Plaintiff's Opposition argues "Defendant and its affiliates are very litigious and no strangers to this Court," and "[t]here is a pattern being established by [Talbot's] in presenting unreasonable, duplicative and already disposed of arguments to the Court." [Doc. No. 80, pg. 5]. These allegations have no factual basis and serve no legitimate purpose other than an attempt to prejudice Talbot's in the eyes of the Court.

- 🐟 Plaintiff's Opposition alleges Defendant engaged in "unethical conduct" relating to "the sales of the first iteration of its knock-off [product]." [Doc.

---

[1] [Doc. No. 67] (hereinafter, the "FAC").
[2] [[Doc. No. 77] (hereinafter, the "Talbot's Motion").
[3] [Doc. No. 80] (hereinafter, the "Opposition").

- No. 80, p. 9]. The FAC does not allege any "unethical" conduct by Talbot's and these allegations in the Opposition are wholly improper.

- Plaintiff's Opposition argues that Talbot's engaged in "dishonest dealings with Plaintiff" [Doc. No. 80, p. 13] and that Talbot's "actions ... were dishonest, underhanded and in contravention of the spirit as well as the letter of the law[.]" Again, Plaintiff's FAC makes no such allegations and there are no facts plead supporting these malicious assertions.

- Plaintiff's Opposition mischaracterizes Talbot's Motion as arguing Talbot's "had every right to steal the design from Plaintiff" and a "right to cheat Plaintiff" [Doc. No. 80, pp. 15-16]. Talbot's Motion cites well-established case law where the Supreme Court and other Federal courts have held there is no prohibition on copying absent an intellectual property right and applies that law to this case where Plaintiff failed to allege an intellectual property right to the baby toilet design in the period preceding the issuance of the Asserted Patent.[4] [Doc. No. 77, p. 22]. Plaintiff's blatant mischaracterization of Talbot's arguments and the Supreme Court's precedent is disingenuous.

- Plaintiff's Opposition rebuts a strawman argument not contained in Talbot's Motion regarding the statutory one-year grace period preceding the filing of a patent application. As discussed below, the one-year grace period relates to patent *validity* and is unrelated to the *infringement* issue raised in Talbot's Motion, namely, that Plaintiff's *unjust enrichment* claim is untenable as the patented design was publicly known prior to the *issuance* of the Asserted Patent.[5]

- Plaintiff's Opposition includes allegations about "integrated companies" that are purportedly related to Talbot's, and argues that "[d]iscovery is necessary to fully understand the interdependent relationship between" these entities. [Doc. No. 80, pp. 10-11]. The relationship between Talbot's and these other entities has no bearing on the issues in the instant motion.

As described below, with the exception of the indispensable party issue,[6] Plaintiff failed to rebut the arguments raised in Talbot's Motion, and the Court should grant the motion in its entirety.

**I. THE COURT'S ORDER [DOC. NO. 69] DOES NOT LIMIT TALBOT'S MOTION TO PLAINTIFF'S SECOND CAUSE OF ACTION**

As an initial matter, Plaintiff asserts the "Court limited [Talbot's] ability to file its second

---

[4] U.S. Design Patent No. D888208 (hereinafter, the "Asserted Patent" or "D208 Patent").
[5] *See* Talbot's Objections to the Magistrate's Report and Recommendation [Doc. No. 66, pp. 2-6].
[6] Plaintiff's Opposition includes an exhibit regarding ownership and assignment of the Asserted Patent. [Doc. No. 80-1]. Although this ownership record was not attached to the FAC, Talbot's concedes, for the purposes of this Motion only, that Plaintiff has alleged sole ownership of the patent, rendering Talbot's 'failure to join an indispensable party' defense moot.

Motion to Dismiss to [] Plaintiff's cause of action for Inducement to Infringe," and contends "[Talbot's] Motion to Dismiss the entirety of Plaintiff's FAC [is] in contradiction of this Court's Judgment."[7] Plaintiff is incorrect: The Court may properly consider all grounds raised in Talbot's Motion. First, Plaintiff's interpretation of the Court's Order[8] misreads the Order and the Federal Rules of Civil Procedure. The Order plainly states "Defendant may file a second motion" without any further restrictions whatsoever.

Second, Plaintiff's interpretation of the Order contradicts the Federal Rules. Plaintiff suggests Talbot's must obtain leave from the Court to file a motion to dismiss. The Federal Rules do not require leave for the timely filing of a motion to dismiss an amended complaint.[9]

Third, Plaintiff contends Talbot's "provides no authority to support its re-filing of its Motion to Dismiss the Unjust Enrichment claim." [Doc. No. 80, p. 5]. As an initial matter, Talbot's Motion is not a "re-filing" of its earlier motion but, rather, addresses the new and revised allegations Plaintiff raised in the FAC. Also, Talbot's Motion cites Rule 12(b)(6), which allows a party to assert the defense of failure to state a claim upon which relief can be granted in a motion. Talbot's Motions asserts this defense to all three counts of Plaintiff's FAC.

Fourth, the FAC contains new factual allegations not in the original complaint. Plaintiff's assertion that Talbot's is "re-arguing" the unjust enrichment claim [Doc. No. 80, p. 13] ignores the significant modifications to the FAC's unjust enrichment claim and the direct and indirect infringement claims. In particular, the FAC includes additional factual and conclusory legal allegations not in the original complaint [*see, e.g.,* Doc. No. 67 at ¶¶ 20-47], all of which are incorporated in the unjust enrichment claim. [*Id.*, ¶ 48]. Further, the FAC supersedes the original

---

[7] [Doc. No. 80, p. 5].
[8] [Doc. No. 69] (hereinafter, the "Court's Order").
[9] *See, e.g., Cherie v. Wells Fargo Bank, N.A.*, Civil Action No. 3:15-CV-2785-G (BH), 2016 WL 3189821, at *3 (N.D. Tex. May 16, 2016).

complaint and renders the original complaint without legal effect.[10] Talbot's Motion properly raises defenses to the legally operative pleading, the FAC.

## II. THE FACTS CITED IN TALBOT'S MOTION ARE WITHIN THE FOUR CORNERS OF THE PLEADINGS

The cases cited in Talbot's Motion, which Plaintiff's Opposition fails to address or distinguish[11], establish that documents cited in the pleadings, such as the emails referenced in Plaintiff's FAC, properly fall within the scope of a motion to dismiss. *See* [Doc. No. 77, p. 4], citing, e.g., *Walch v. Adjutant General's Dep't of Tex.*, 533 F.3d 289, 293-94 (5th Cir. 2008). The fact that the referenced emails are also attached to Mr. Hakim's Declaration[12] does not remove them from the scope of Talbot's Motion. Thus, the Court may consider these documents in deciding Talbot's Motion, without necessitating conversion to a motion for summary judgment.

## III. THE COURT SHOULD DISMISS THE FIRST CAUSE OF ACTION FOR DIRECT INFRINGEMENT

### A. *Pre-Suit Direct Infringement*

Plaintiff has not alleged compliance with the Marking Statute, 35 U.S.C. § 287 ("§ 287"), and therefore Plaintiff's claims to pre-suit damages are barred. Plaintiff, however, mistakenly argues that § 287 does not apply here because Talbot's is purportedly not an "innocent infringer". [Doc No. 80, pp. 11-13]. Plaintiff offers no legal support for its erroneous interpretation of § 287 and there is none – it should be rejected. First, the *Wine* case Plaintiff relies upon for its "innocent infringer" argument[13] is a 1936 Supreme Court opinion regarding 35 U.S.C. § 49, enacted in 1927, not § 287, enacted in 1952.[14] Second, even if the *Wine* decision was applicable to § 287, *Wine*

---

[10] *See Wooten v. McDonald Transit Assocs., Inc.*, 775 F.3d 689, 701 (5th Cir. 2015); 6 CHARLES A. WRIGHT ET AL., FEDERAL PRACTICE AND PROCEDURE § 1476, at 90 (3d ed. 2010).
[11] *See* [Doc. No. 80, pp. 9-10] (failing to cite to or address any case law).
[12] *See* [Doc. No. 77, fn. 8, 13, 21].
[13] *Wine Ry. Appliance Co. v. Enter. Ry. Equip. Co.*, 297 U.S. 387, 395, 56 S.Ct. 528, 530, 80 L.Ed. 736 (1936).
[14] *See Motorola, Inc. v. United States*, 729 F.2d 765, 769-70 (Fed. Cir. 1984) (describing legislative history of the marking statutes and noting significant changes in the text of the marking statute); Jessica Siegel, Comment, *The*

4

does not support Plaintiff's argument. Plaintiff argues that when an accused infringer is "not innocent", this overcomes a § 287 defense, but *that is not the holding in Wine*. Rather, in *Wine,* there are two factors considered to achieve the purpose of 35 U.S.C. § 49:

> The purpose [of 35 U.S.C. § 49] is not that notice may be given of the issuance and existence of a patent, but to prevent innocent infringement; and **this is accomplished in two ways — by marking the article, if made, for all to see; or by sending an accusing notice**.

*Wine*, 297 U.S. at 395 (emphasis supplied). Plaintiff argues that although these two factors are not met (since Plaintiff did not mark the product or provide Talbot's with actual notice of the patent), that is irrelevant, because Plaintiff believes Talbot's is not "innocent." This is incorrect. The relevant case law interpreting § 287 demonstrates that Plaintiff's pre-suit infringement claims must be dismissed because they fail to meet the requirements of § 287.

Plaintiff also argues that Talbot's "knew [Plaintiff's design] was open for exclusivity in the United States," and that therefore § 287 does not apply. This is a misapplication of law to irrelevant facts. Talbot's was never notified of any exclusive patent rights to the design in the U.S. prior to Plaintiff filing the instant suit. Despite Talbot's specific request for the elucidation of Plaintiff's patent rights, Plaintiff never informed Talbot's of its pending U.S. design patent. Any other "notice" argued by Plaintiff in its brief is irrelevant to the § 287 defense and serves only to distract from the arguments raised in Talbot's Motion.

## B. Post-Suit Direct Infringement

Plaintiff's FAC fails to allege facts regarding any sales of the accused product after November 1, 2020, and its post-suit direct infringement claims should be dismissed for that reason. Talbot's **stopped** selling, using, and importing the Accused Product *prior to* Plaintiff's filing of the

---

*Patent Marking & Notice Statute: Invitation To Infringe or Protection for the Unwary?*, 36 Hous. L. REV. 583, 597-600 (1999) (same).

original Complaint[15], and thus any further amendment would be futile. Plaintiff argues that statements in Mr. Hakim's Declaration are ambiguous, and that Plaintiff need not allege post-filing sales due to the purported ambiguity. But Mr. Hakim's Declaration clearly states that:

> All Talbot's sales of its Original My Real Potty were sold and fulfilled prior to November 1, 2020, before the December 8, 2020 filing of the Complaint in this action and before Talbot's had knowledge of the D208 Patent.[16]

Plaintiff makes a strained and illogical argument[17] that since Mr. Hakim's Declaration supports that the bulk of sales were to Amazon, the Declaration "cannot be relied upon". This is illogical, as Mr. Hakim's declaration states "All Talbot's sales," i.e., not just sales to Amazon, "were sold and fulfilled prior to November 1, 2020."

Plaintiff also argues that the direct infringement claim should proceed because Mr. Hakim's statement regarding the cessation of sales should not be considered. This argument has no merit **because Plaintiff failed to allege any facts supporting sales after November 1, 2020**, which is itself fatal to the post-suit direct infringement claim. In sum, the Court need not consider the Declaration in concluding that Plaintiff's first cause of action is insufficiently plead. Though Plaintiff has not requested further amendment, the Court may consider the Hakim Declaration on the question of whether to allow additional pleadings – it demonstrates that further amendment would be futile.

### IV. THE COURT SHOULD DISMISS THE SECOND CAUSE OF ACTION FOR INDIRECT (INDUCED) INFRINGEMENT

Plaintiff also failed to allege Talbot's had pre-suit knowledge of the Asserted Patent through actual knowledge or willful blindness, or that Talbot's had any specific intent to induce others to infringe the Asserted Patent. Plaintiff offers no rebuttal to these arguments.

---

[15] *See* [Doc. No. 77-4], Ex. 9, Hakim Decl., ¶¶ 19, 20, and 25.
[16] [*Id.*, ¶ 25].
[17] *See* [Doc. No. 80, pp. 9-10].

6

Instead, Plaintiff's Opposition argues "Defendant's Scheme to Copy Plaintiff's Baby Potty Products Constitutes Intentional Infringement That Began Before and Continued After the Issuance of the '208 Patent," [Doc. No. 80, p. 11], but this section addresses § 287, not the "specific intent" prong of the indirect infringement analysis. Plaintiff fails to address the arguments in Talbot's Motion regarding the induced infringement claim and the FAC has no facts or allegations that Talbot's had pre-suit knowledge of the Asserted Patent. Plaintiff instead presents irrelevant red herring arguments that Talbot's knew of the "design" (not the patent).

It is black letter law that infringement cannot occur before the issuance of a patent, and Plaintiff's misstatement of the law to that effect ("Infringement That Began Before...Issuance of the '208 Patent") only serves to confuse and muddle the issues before the Court.

### V.  THE COURT SHOULD DISMISS PLAINTIFF'S WILLFUL INFRINGEMENT CLAIM

Plaintiff's Opposition fails to address the arguments regarding Plaintiff's insufficiently plead willful infringement claim. Indeed, Plaintiff's Opposition mentions "willful infringement" in only two instances, [Doc. No. 80, pp. 9, 13], and is otherwise devoid of any rebuttal. Plaintiff fails to address the cases cited in Talbot's Motion and does not show that the elements of willful infringement are sufficiently plead in the FAC. They are not sufficiently plead, and the Court should dismiss Plaintiff's willful infringement claim.

### VI.  THE COURT SHOULD DISMISS PLAINTIFF'S UNJUST ENRICHMENT CLAIM

Plaintiff creates convoluted arguments about why Plaintiff's unjust enrichment claim should survive. Talbot's argument is simple: Plaintiff's public demonstrations and sales of its WY208 design, which occurred prior to the issuance of the Asserted Patent and prior to Talbot's first sales of the Accused Product, extinguish Plaintiff's unjust enrichment claim as a matter of law. Rather than rebutting this argument, Plaintiff's Opposition uses false, bombastic, and

unprofessional invective intended to tarnish Talbot's reputation to obtain an equitable remedy where none is available.

First, the law is clear: there can be no patent infringement prior to the issuance of a patent. A party is free to copy or implement a design prior to a patent's issuance as long as that design is not covered by some other intellectual property right (copyright, trademark, trade dress, or trade secret).[18] Plaintiff has not alleged any intellectual property right (e.g., trade secret) in the design prior to the issuance of the patent, and Plaintiff *cannot* allege such a right, because the design was publicly known. In fact, there are no allegations by Plaintiff that the design was subject to the protections afforded by any intellectual property rights prior to the issuance of the Asserted Patent, and that alone should support dismissal.[19]

Disregarding Talbot's argument and cited law, Plaintiff's Opposition asserts a legally and logically unsound position. For example, Plaintiff argues an inapposite point regarding the one-year grace period for invalidating disclosures, as defined in 35 U.S.C. § 102, to try and rescue its unjust enrichment claim. This one-year grace period allows a patent applicant to disclose the invention up to a year before *filing* the patent application without affecting *patent eligibility*. This *is irrelevant to* the issue of *infringement damages prior to the issuance of the patent*. Indeed, Plaintiff is correct in stating that the grace period "is immaterial" regarding the issue of infringement. [Doc. No. 80, p. 16]. Nevertheless, Plaintiff appears to argue that this one-year grace period somehow entitles it to pre-issuance infringement damages. Instead, Talbot's Motion explains that ***infringement* damages are not available prior to the *issuance* of a patent**, regardless of whether the design was publicly known, **unless some other intellectual property**

---

[18] *See* [Doc. No. 77, pp. 21-23], citing, e.g., *Traffix Devices, Inc. v. Marketing Displays, Inc.*, 532 U.S. 23, 29 (2001) (citations omitted); *Confold Pacific v. Polaris Indus.*, 433 F.3d 952, 959 (7th Cir. 2006) (citations omitted).
[19] To the extent the Hakim Declaration confirms the early public disclosure of the design, it supports the argument that further amendment would be futile.

**right was in effect during that period**. Because the baby toilet design was publicly known during the relevant pre-issuance period, there can be no trade secret claim, and Plaintiff has alleged no other intellectual property right during the pre-issuance period.

Plaintiff's spurious and inflammatory characterization of this simple application of well-established law as permitting "steal[ing]" of designs only serves to distract from its failure to adequately plead the unjust enrichment claim and tries to confuse the legal and factual issues before the Court. Plaintiff's FAC only alleges that Talbot's stole a baby toilet design. However, this design was publicly known and therefore was not protected by any U.S. intellectual property right *prior to* the issuance of the Asserted Patent. And, as detailed in the Magistrate's R&R[20] and Talbot's Motion, any claim to unjust enrichment *after* the issuance of the Asserted Patent is preempted by Federal patent law.

Further, Plaintiff fails to address or challenge Talbot's argument regarding the state law preemption of Plaintiff's unjust enrichment claim, adding to the list of deficiencies in Plaintiff's FAC. Plaintiff's unjust enrichment claim is also preempted by Florida law, and the Court should dismiss the claim for that reason as well.

Finally, in a last-ditch effort, Plaintiff tries to rescue the unjust enrichment claim by alleging that Talbot's purported copying of the design before the patent issued somehow violated an implied covenant of good faith and fair dealing under Florida law.[21] As an initial matter, this was not alleged in Plaintiff's FAC and it is improper for Plaintiff to raise for the first time in Plaintiff's Opposition. Even if these allegations were disclosed in the FAC, Plaintiff has not stated a claim for a violation of Florida's covenant of good faith and fair dealing. Plaintiff's FAC merely alleges, at best, that Plaintiff and Talbot's engaged in business discussions over pricing and

---

[20] [Doc. No. 65, pp. 15-18].
[21] [Doc. No. 80, pp. 14-16].

ultimately could not reach a long-term supply agreement. The emails cited by Plaintiff contain no promises whatsoever, nor do they disclose any information or designs which would have been subject to intellectual property protection or confidentiality. The Hakim Declaration demonstrates these omissions are irremediable and therefore any amendment would be futile.

Taken to its logical conclusion, Plaintiff's interpretation of Florida law would effectively prohibit a business from changing suppliers, even where the product being supplied has no intellectual property protection and no explicit or implicit promises have been made. This would result in every instance of failed business negotiations giving rise to potential liability, a nonsensical outcome. There is simply no legal authority for this interpretation of Florida's unjust enrichment law, and Plaintiff does not cite any case to support this basis for unjust enrichment.

The law is clear: in the absence of any intellectual property protection, there can be no liability for copying a product in the public domain. The fact that the parties engaged in business negotiations – which were not subject to any contractual or implied agreement – has no bearing on this fundamental principle of intellectual property law.

## VII. CONCLUSION

Plaintiff has failed to rebut the arguments raised in Talbot's Motion to Dismiss, choosing instead to lace its Opposition with inappropriate, impertinent, and unprofessional invective and mischaracterizations of law and fact, in stark violation of the Federal Rules.[22] The Court should reject Plaintiff's efforts to distract from the issues and should dismiss all three counts of the FAC, in their entirety, with prejudice for failure to state a claim. On the facts alleged in the FAC, no amount of further amendment can change the applicable law no matter how it is ignored, misinterpreted, or misconstrued by Plaintiff.

---

[22] *See* Fed. R. Civ. P. 1 (The Rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding").

Respectfully Submitted this 25th day of January, 2022

By:   */s/ W. David Hammett*                               By:   */s/ Elissa A. Tisdahl*

W. David Hammett, Esq.                                     Elissa A. Tisdahl, Esq.
Louisiana Bar No. 23112                                    Florida Bar No. 85521
wdh@dfklaw.com                                             etisdahl@cwiplaw.com
Grant M. Tolbird                                           Andrew M. Goldberg, Esq.
Louisiana Bar No. 37337                                    Florida Bar No. 1030784
gmt@dfklaw.com                                             agoldberg@cwiplaw.com
Davenport, Files & Kelly, L.L.P.                           CHRISTOPHER & WEISBERG, P.A.
1509 Lamy Lane                                             1232 N. University Drive
P.O. Box 4787                                              Plantation, FL 33322
Monroe, LA 71211                                           (954) 828-1488 (Telephone)
(318) 387-6453                                             (954) 828-9122 (Facsimile)
*Counsels for Defendant*                                   *Counsel for Defendant*

                                                           Robert M. Chiaviello Jr., Esq.
                                                           New York Bar No. 2018687
                                                           Louisiana Bar No. 37370
                                                           Texas Bar No. 04190720
                                                           Washington, D.C. Bar No. TX0062
                                                           bobc@nuby.com
                                                           Nuby Law
                                                           3030 Aurora Avenue
                                                           Monroe, LA 71201
                                                           Phone: (318) 410-4012
                                                           *Counsel for Defendant*

                                                           Hartwell P. Morse, III, Esq.
                                                           Louisiana Bar No. 38626
                                                           Illinois Bar No.  6199527
                                                           hartwellm@nuby.com
                                                           Nuby Law
                                                           3030 Aurora Avenue
                                                           Monroe, LA 71201
                                                           Phone: (318) 410-4012
                                                           *Counsel for Defendant*

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that on this 25th day of January, 2022, I filed the foregoing Defendant's Reply in Support of Motion to Dismiss Plaintiff's First Amended Complaint, electronically with the Clerk of the Court using the CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified on the below Service List in the manner specified therein.

                                              */s/ Carley Lindsey*
                                              Carley Lindsey
                                              carleyl@nuby.com

## SERVICE LIST
**Case No.: 1:20-cv-25010-PCH**

| | |
|---|---|
| Nihat Deniz Bayramoglu, Esq.<br>Nevada Bar No. 14030<br>California Bar No. 294922<br>Email: deniz@bayramoglu-legal.com<br>Damon A. Stemen, Esq.<br>Nevada Bar No. 6832<br>Email: Damon@bayramoglu-legal.com<br>Bayramoglu Law Office, LLC<br>1540 West Warm Springs Road, Suite 100<br>Henderson, NV 89014<br>Telephone: (702) 462-5973<br>*Counsels for Plaintiff*<br>*VIA CM/ECF* | Andrew S. Rapacke, Esq.<br>Florida Bar No. 116247<br>andy@arapackelaw.com<br>The Rapacke Law Group, P.A.<br>3750 Birch Terrace<br>Davie, FL 33330<br>Telephone: 954.951.0154<br>Facsimile: 954.206.0484<br>*Counsel for Plaintiff*<br>*VIA CM/ECF* |
| C.A. Martin, III, Esq.<br>Louisiana Bar No. 8970<br>Email: camiii@centurytel.net<br>Marshall T. Napper, Esq.<br>Louisiana Bar No. 9887<br>Email: mnapper@centurytel.net<br>Shotwell, Brown & Sperry, APLC<br>1101 Royal Avenue, P.O. Box 14140<br>Monroe, LA 71207<br>Telephone: (318) 388-4700<br>*Counsel for Plaintiff*<br>*VIA CM/ECF* | |

12